**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 31, 2006**

**Charles R. Fulbruge III**
**Clerk**

REVISED APRIL 5, 2006
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-20841
_____

In The Matter Of:  AMCO INSURANCE; REHMAT PEERBHAI,

                                                    Debtors.

----------------------

WELLS FARGO BANK OF TEXAS N. A.,

                                                    Appellant,

                        versus

RONALD J. SOMMERS, Trustee

                                                    Appellee.
_____

Appeal from the United States District Court
for the Southern District of Texas, Houston
USDC No. 4:04-CV-455
_____

Before JOLLY, DENNIS, and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    The significance of this bankruptcy case relates to the nunc pro tunc substantive consolidation of the assets and liabilities of a corporation in bankruptcy and its sole shareholder, not in bankruptcy (until afterwards).  Because the bankruptcy court's nunc pro tunc order was an abuse of discretion under the facts of this case, we vacate the district court's order and remand.

Rehmat A. Peerbhai, an entrepreneur in the automobile industry, owned and managed AIG, a holding company in the automobile insurance business, prior to 1992.[1]  On April 21, 1992, Peerbhai incorporated a new company, AIA, which sells automobile insurance.  A parent-subsidiary relationship was formed between AIG, as parent, and AIA, as subsidiary, with Peerbhai acting as the sole owner of both companies.  AIG, AIA, and Peerbhai are all debtors in bankruptcy proceedings that are at issue in this appeal.

In September 2000, Peerbhai, in his individual capacity, and AIG approached Wells Fargo for financing, and Wells Fargo agreed to enter into loan transactions with both.  However, Wells Fargo required Peerbhai, AIG, and AIA to be independently audited by PricewaterhouseCoopers and Belew Averitt LLP before granting the loans.  After reviewing the financial statements and audit reports, Wells Fargo agreed to lend money to Peerbhai as an individual, and to AIG.  Wells Fargo extended a loan in the amount of $2.4 million to Peerbhai and AIG as co-borrowers, and another loan in the amount of $1.2 million to AIG.  Wells Fargo required Peerbhai personally to guarantee AIG's corporate obligations, and Peerbhai executed a Continuing Guaranty on September 21, 2000.

In December 2001, AIG breached a material loan covenant with Wells Fargo.  On January 10, 2002, Wells Fargo filed, in state

---

[1] This recitation of the facts is taken largely from the district court's opinion.

court, an Original Petition and Restraining Order against AIG based on this breach. AIA and AIG both filed petitions for bankruptcy under Chapter 7 of the Bankruptcy Code on February 4, 2002. On February 11, Wells Fargo filed a Motion to Lift Stay to Pursue State Court Litigation in the AIG bankruptcy case. The bankruptcy court entered an agreed order partially lifting the automatic stay on March 14, expressly permitting Wells Fargo to pursue state court remedies against Peerbhai individually. Wells Fargo began collection activities against Peerbhai, and thereafter Peerbhai requested that Wells Fargo forbear from exercising its legal and contractual rights and remedies until April 9, 2003. Wells Fargo and Peerbhai reached an agreement and executed a Limited Forbearance Agreement dated April 10, 2002, and they filed an Agreed Judgment settling the state court litigation. The state court entered the Agreed State Court Judgment on April 25, 2002, giving Wells Fargo a consensual lien on Peerhbai's homestead, as well as a judgment against Peerbhai pursuant to the terms of Peerbhai's Continuing Guaranty. The total amount of the Agreed State Court Judgment against Peerbhai was $3,398,956.16.

II

On July 11, 2002, the Trustee for AIA, Ronald J. Sommers, filed an Application for Substantive Consolidation ("Application"), seeking to consolidate AIA and Peerbhai as a single debtor in bankruptcy. At the time of the Application, Peerbhai was not in bankruptcy, and the Application sought essentially to put him into

3

bankruptcy and relate his filing date back to AIA's February 4, 2002 filing date under the theories of "single economic unit" and "single business enterprise." Wells Fargo objected to the Application. On December 11, 2002, Peerbhai filed a Chapter 11 bankruptcy petition, which he later converted into a Chapter 7 petition.

The United States Bankruptcy Court for the Southern District of Texas held evidentiary hearings on the Application on May 2 and May 23, 2003. Sommers argued that Peerbhai and AIA were not separate legal entities, and that the finances of AIA and AIG were commingled by Peerbhai so that substantively consolidating all of Peerbhai's personal assets with the assets of AIA and AIG was the only way to ensure equitable distribution of the assets to the creditors of AIA and AIG.

On September 25, 2003, the bankruptcy court issued Findings of Fact and Conclusions of Law. It determined that Peerbhai engaged in a pattern of activity that was aimed at concealing AIA's proceeds from its creditors and from Peerbhai's personal creditors, that Peerbhai made no meaningful distinction between his funds and those of AIA while AIA was a going concern, that substantial identity between Peerbhai and AIA existed and AIA's creditors dealt with Peerbhai and AIA as a single economic unit and did not rely on their separate identities in extending credit, that Peerbhai and AIA did not observe the corporate formalities required by Texas law, and that Peerbhai treated AIA as an alter ego of himself,

4

using the AIA corporate status to commit fraud against his and AIA's creditors. Based on these findings, the bankruptcy court concluded that substantive consolidation was appropriate for several reasons: first, substantive consolidation would benefit all creditors, and not unfairly prejudice any creditor, because the financial affairs of AIA and Peerbhai were so entangled that the assets of each could not be segregated; second, substantive consolidation would avoid the harm of AIA's creditors receiving virtually nothing in a bankruptcy that was caused primarily by Peerbhai looting AIA; third, Wells Fargo would not be unfairly harmed by substantive consolidation because of Wells Fargo's knowledge and the circumstances surrounding the execution of the Limited Forbearance Agreement, and further that any prejudice Wells Fargo may suffer from substantive consolidation is not unfair, and is substantially outweighed by the benefits to other creditors; fourth, the fact that AIA and Peerbhai were essentially a single financial entity could not have been ignored by Wells Fargo or any other reasonably diligent party extending credit to Peerbhai; and fifth, substantive consolidation should be effective <u>nunc</u> <u>pro</u> <u>tunc</u> to the petition date of February 4, 2002, because at all relevant times, Peerbhai and AIA operated as one financial entity.

Wells Fargo appealed to the district court the bankruptcy court's November 17, 2003 Order Granting Substantive Consolidation. In that appeal, Wells Fargo argued for the first time that the Supreme Court of the United States effectively abrogated the

5

doctrine of substantive consolidation in Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., which held that a preliminary injunction, issued prior to any judgment essentially to prevent fraudulent transfer of assets, was an improper use of equity powers. 527 U.S. 308, 332 (1999) ("[T]he equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence. Even when sitting as a court in equity, we have no authority to craft a 'nuclear weapon' of the law like the one advocated here."). The district court, however, determined that substantive consolidation remains an available remedy despite the Grupo Mexicano holding, reading Grupo Mexicano narrowly and noting that Grupo Mexicano did not discuss the remedy of substantive consolidation.

Wells Fargo further argued that even if substantive consolidation is an available remedy, the bankruptcy court should not have applied it retrospectively to revoke Wells Fargo's interests in Peerbhai's assets. The district court noted that before a court may exercise its nunc pro tunc powers, that court must make an inquiry to determine whether retroactivity is necessary to achieve some benefit or avoid harm. The district court determined that the bankruptcy court took the proper factors into consideration in determining whether to apply substantive consolidation retroactively, and thus its decision was appropriate.

Wells Fargo made a third argument to the effect that the bankruptcy court's alter ego conclusion was improper under Texas

6

law, which requires proof of actual fraud. Wells Fargo contended that the bankruptcy court did not show that Peerbhai had the actual intent necessary to prove actual fraud. The district court held that based on the bankruptcy court's findings, the actions of Peerbhai prove that his intent to defraud was calculated, not accidental, and thus the bankruptcy court's decision regarding alter ego was not erroneous.

Wells Fargo timely appeals the district court's final judgment.

III

Wells Fargo argues that the bankruptcy court did not have the power to order substantive consolidation and, in the alternative, that if the bankruptcy court had such power, it applied the wrong standard to determine whether substantive consolidation was appropriate. Further, Wells Fargo contends that substantive consolidation was inappropriate in this case and, finally, that the bankruptcy court erred in issuing the order to consolidate <u>nunc</u> <u>pro</u> <u>tunc</u>.

This Court applies the same standard of review to the bankruptcy court's decision as applied by the district court. <u>Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)</u>, 258 F.3d 385, 387 (5th Cir. 2001). The bankruptcy court's findings of fact are reviewed under a clear error standard, while conclusions of law are reviewed <u>de</u> <u>novo</u>. <u>Id</u>. The determination of which standard to apply in order to assess whether

7

substantive consolidation is appropriate is a question of law reviewed <u>de</u> <u>novo</u>. As to the bankruptcy court's decision to consolidate, some courts suggest that we review such decision under an abuse of discretion standard. <u>See</u>, <u>e.g.</u>, <u>Reider v. Fed. Deposit Ins. Corp. (In re Reider)</u>, 31 F.3d 1102, 1105 (11th Cir. 1994) (applying abuse of discretion standard to bankruptcy court's decision to consolidate estates of spouses, as explicitly authorized under the Bankruptcy Code); <u>First Nat'l Bank of El Dorado v. Giller (In re Giller)</u>, 962 F.2d 796, 799 (8th Cir. 1992) (stating that the abuse of discretion standard may be appropriate, but declining to resolve the question). This Court has stated that "substantive consolidation affects the substantive rights of the parties and therefore is subject to heightened judicial scrutiny." <u>Clyde Bergemann, Inc. v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)</u>, 250 F.3d 955, 959 n.6 (5th Cir. 2001). Furthermore, we review the bankruptcy court's decision to enter a <u>nunc</u> <u>pro</u> <u>tunc</u> order for abuse of discretion. <u>See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enterprises, Ltd., II)</u>, 994 F.2d 1160, 1170 (5th Cir. 1993); <u>see</u> <u>also</u> <u>Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)</u>, 392 F.3d 1064, 1067 (9th Cir. 2004).

On March 14, 2002, the bankruptcy court entered an Agreed Order Partially Lifting the Automatic Stay to Proceed in State Court Litigation ("Agreed Order"). This order granted Wells Fargo's "Emergency Motion to Lift the Automatic Stay to proceed in

8

the lawsuit [in state court] ..., to maintain its temporary injunction against [AIG] and pursue remedies against [] Peerbhai, individually[.]" Sommers and Wells Fargo both consented to the Agreed Order. The bankruptcy court, by granting the motion to lift the stay, and Sommers, by agreeing to it, explicitly authorized and consented to Wells Fargo's pursuit of state court remedies against Peerbhai. Because of this green light by the bankruptcy court, Wells Fargo expended its time and money to pursue the state court litigation until the suit concluded in the Limited Forbearance Agreement. Yet, when Sommers later filed his motion for substantive consolidation, which the bankruptcy court in turn granted, he then sought to undo what he had earlier specifically authorized by applying the consolidation of the estates <u>nunc</u> <u>pro</u> <u>tunc</u>. In granting the motion, the bankruptcy court stated that "[t]he avoidance of the liens granted to Wells Fargo by Peerbhai pursuant to the Limited Forbearance Agreement would simply return Wells Fargo to its position as of the petition date." We think it was a little late for this reversal of course.

The bankruptcy court, in granting Wells Fargo authorization to pursue the state court litigation, and then invalidating its authorization some twenty months later, and nineteen months after the litigation had terminated in a settlement, cited Section 105(a) of the Bankruptcy Code as its jurisdictional authority.[2] However,

---

[2] The provision granting the bankruptcy court its general equitable powers states that:

"[a] court's powers under § 105(a) are not unlimited[.]" <u>Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)</u>, 378 F.3d 511, 523 (5th Cir. 2004). Section 105(a) "does not permit [] courts to 'act as roving commission[s] to do equity.'" <u>Id.</u> (quoting <u>In re Southmark Corp.</u>, 49 F.3d 1111, 1116 (5th Cir. 1995)) (second alteration in original).[3] But even if the bankruptcy court

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (2005).

[3] We also note concerns regarding the consolidation of a non-debtor with a debtor, which is the essence of what the <u>nunc pro tunc</u> nature of the order granting substantive consolidation achieved. "The courts are divided on whether they may order consolidation of a debtor with a nondebtor." 2 Collier on Bankruptcy ¶ 105.09[1][c] (15th ed. rev. 2005). Some courts have allowed such consolidation. <u>See</u>, <u>e.g.</u>, <u>Soviero v. Franklin Nat'l Bank</u>, 328 F.2d 446 (2d Cir. 1964); <u>Walter E. Heller & Co. v. Langenkamp (In re Tureaud)</u>, 59 B.R. 973 (N.D. Okla. 1986). Others have cautioned that "as careful as the courts must be in allowing substantive consolidation of *debtors* to occur ..., the caution must be multiplied exponentially in a situation where a consolidation of a debtor's case with a non-debtor is attempted." <u>Morse Operations, Inc. v. Robins Le-Cocq, Inc. (In re Lease-A-Fleet, Inc.)</u>, 141 B.R. 869, 872 (Bankr. E.D. Penn. 1992). Still others have held that the bankruptcy court does not have subject matter jurisdiction over a non-debtor, thus precluding substantive consolidation, as § 105 of the Bankruptcy Code is not a jurisdictional grant, and further that substantive consolidation should not be used to circumvent the involuntary bankruptcy petition procedures of § 303 of the Bankruptcy Code. <u>Helena Chem. Co. v. Circle Land & Cattle Corp. (In re Circle Land & Cattle Corp.)</u>, 213 B.R. 870, 876-77 (Bankr. D. Kan. 1997).

10

had the jurisdictional authority, it abused its discretion in exerting it. Furthermore, we think that the trustee, Sommers, should have been more circumspect in requesting such an order given his earlier approval of the litigation that resulted in settlement terms that could not have been unexpected. Wells Fargo relied on the agreement of the trustee and the approval of the court when it lifted the stay, and Wells Fargo made investments of its time and money because of this specific approval. Furthermore, nothing in the record suggests that Sommers knew anything more at the later date when he asked the court to grant substantive consolidation than he could have reasonably known at the time the Agreed Order was entered. This untimely withdrawal of approval might have been understood if the litigation had produced some anomalous and unexpected result, but it did not. On the other hand, the abrogation of the earlier approval worked to the significant prejudice of Wells Fargo.[4]

---

In this case, Peerbhai was a non-debtor on February 4, 2002, the date to which the bankruptcy court determined in its nunc pro tunc order that substantive consolidation relates. Peerbhai did not file his own bankruptcy petition for another ten months after the petition date of AIA and AIG, and five months after Sommers filed the Application for Substantive Consolidation. Because Peerbhai was a non-debtor for such a substantial amount of the relevant time, special concerns exist. Substantive consolidation should be ordered with more caution than normal, and jurisdictional concerns may also be at issue.

[4] This abrogation also seems to be in tension with Section 105(a), which allows the court to sua sponte take action to enforce or implement its orders. In this case, the bankruptcy court appears to use its Section 105(a) powers to contradict its previous order.

Because we hold that the bankruptcy court erred in applying substantive consolidation nunc pro tunc, and thus vacate and remand for further proceedings, we decline to address Wells Fargo's arguments regarding the bankruptcy court's power to grant substantive consolidation and the proper standard for and application of substantive consolidation.[5] Given that the order of substantive consolidation, in the absence of a nunc pro tunc order, appears likely to be fruitless, there is the probability that the issue will not arise on remand.

IV

---

[5] Without deciding whether the bankruptcy court has the power to order substantive consolidation, we do note that those jurisdictions that have allowed it emphasize that substantive consolidation should be used "sparingly." In re Owens Corning, 419 F.3d 195, 208-09 (3d Cir. 2005); In re Bonham, 229 F.3d 750, 767 (9th Cir. 2000); Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 518 (2d Cir. 1988); 2 Collier on Bankruptcy ¶ 105.09[1][d] (15th ed. rev. 2005). It "is an extreme and unusual remedy." Gandy v. Gandy (In re Gandy), 299 F.3d 489, 499 (5th Cir. 2002). "Indeed, because substantive consolidation is extreme ... and imprecise, this 'rough justice' remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies." Owens Corning, 419 F.3d at 211. Furthermore, it appears on the record before us that other remedies, such as the doctrines of alter ego and fraudulent conveyance, may have been available, and appropriate under the circumstances, and the bankruptcy court should duly make such considerations. Substantive consolidation should not be used as "a 'free pass' to spare [d]ebtors or any other group from proving challenges, like fraudulent transfer claims, that are liberally brandished to scare yet are hard to show." Owens Corning, 419 F.3d at 215. As the Owens Corning court noted, if the objectors to substantive consolidation were as vulnerable to the fraudulent transfer challenges as alleged, "then the game should be played to the finish in that arena." Id.

For the reasons stated, the judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

VACATED and REMANDED.