**In re DBSI, INC., et al., Debtors.**

**Republic Underwriters Insurance Company, Plaintiff,**

**v.**

**DBSI Republic, LLC, and TIC Properties Management, LLC, Defendants.**

**Bankruptcy No. 08–12687 (PJW). Adversary Nos. 09–51041 (PJW), 09–51042(PJW).**

United States Bankruptcy Court, D. Delaware.

Aug. 10, 2009.

---

Carl N. Kunz, III, Amy A. Quinlan, Morris James LLP, Wilmington, DE, Bruce Akerly, Jeffrey Lowenstein, Heather H. Jobe, Bell Nunnally & Martin LLP, Dallas, TX, for Plaintiff Republic Underwriters Insurance Company.

Christopher P. Simon, Patrick Brannigan, Cross & Simon, LLC, Wilmington, DE, Thomas R. Fawkes, Edward J. Hannon, Freeborn & Peters LLP, Chicago, IL, for the Tenant–In–Common Investors and TIC Properties Management, LLC.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion of Plaintiff Republic Underwriters Insurance Company ("Republic") for remand, mandatory abstention and remand, or, alternatively, permissive abstention and remand (Adv.Doc. # 5), and its application for a preliminary injunction (Adv.Doc. # 13). For the reasons stated below, Republic's motion for remand and request for a preliminary injunction are both denied.[1]

## BACKGROUND

On November 6, 2008, DBSI, Inc. ("DBSI") and certain of its affiliated entities, including DBSI Republic LeaseCo, LLC ("DBSI LeaseCo") (collectively, "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy

---

1. Oral argument on these two motions was scheduled for August 4, 2009. However, the parties agreed to defer the oral argument to a later date this month and to engage in settlement discussions in the meantime. Notwithstanding that schedule, the Court thought it appropriate to issue this opinion with the view that it might assist in a settlement of the matter.

Code, 11 U.S.C. §§ 101 *et seq.* (Case No. 08–12687.) Prior to filing for bankruptcy, part of Debtors' business model consisted of acquiring non-residential real properties, each purchased by a wholly-owned subsidiary of DBSI created specifically for the purpose of acquiring each property, and then locating interested investors willing to purchase fractional interests in each acquired property and selling the property to those investors as tenants-in-common owners ("TIC Investors") for a profit (each a "TIC Transaction"). Simultaneously with each TIC Transaction, a DBSI entity, usually the same entity as formed for the TIC Transaction, entered into a master lease agreement ("Masterlease") with the TIC Investors pursuant to which the DBSI entity leased the property from the TIC Investors and sublet it to commercial tenants pursuant to subleases. Together, Debtors refer to the TIC Transactions and Masterleases as its "Property Management Business." The instant adversary proceeding arises out of one of these TIC Transactions and accompanying Masterlease. (Adv.Doc. # 15, pp. 6–8.)

Prior to Debtors' bankruptcy filings, Republic was a commercial tenant at a property located at 5525 LBJ Freeway in Dallas, Texas ("Property") under a lease agreement with TC Dallas # 2, LP ("TC Dallas") as landlord ("Republic Lease"). On November 3, 2004, TC Dallas assigned the Republic Lease to DBSI Republic, LLC ("DBSI Republic") upon DBSI Republic's purchase of the Property. In connection with its purchase of the Property, DBSI Republic entered into a Masterlease with DBSI LeaseCo ("DBSI Republic Masterlease"). The DBSI Republic Masterlease assigned to DBSI LeaseCo the right to act as landlord for the Property as to any existing leases, including the Republic Lease. Subsequent to these transaction, DBSI Republic transferred ownership interests in the Property and rights under the DBSI Republic Masterlease to the tenant-in-common investors of the Property ("Republic TIC Investors").[2] (*Id.* at pp. 8–9; Adv. Doc. # 5, pp. 5–6.) Accordingly, prior to Debtors' bankruptcy filings, the Republic TIC Investors (and possibly DBSI Republic) owned the Property, which DBSI LeaseCo managed pursuant to the DBSI Republic Masterlease, and which Republic was a subtenant of pursuant to the Republic Lease.

In connection with the bankruptcy filing, Debtors sought to divest themselves of the Property Management Business assets. To this end, on January 7, 2009, the Court approved Debtors' motion (Doc. # 777) to establish sales procedures for the Property Management Business assets. (Doc. # 1050.) The approved sales procedures provided for an auction, the winner of which would have the right to negotiate with the various TIC Investors groups to assume management of the properties which various of Debtors' entities had been managing pursuant to Masterleases, such as the DBSI Republic Masterlease. The approved sales procedures also provided that the TIC Investors as to each TIC Transaction had the right to designate whether their Masterlease and accompanying subleases were to be rejected or assumed and assigned. (Adv.Doc. # 15, pp. 10–11.) The sales procedures order explicitly stated that "[t]his Court shall retain jurisdiction over any matters related

---

**2.** Republic contends that DBSI Republic transferred 52% of the ownership to a group of sixteen individual tenant-in-common investors, and that DBSI Republic still owns the remaining 48% of the ownership. (Adv.Doc. # 35.) Conversely, the Republic TIC Investors contends that DBSI Republic transferred 100% of its ownership in the Property to the Republic TIC Investors and that no entity related to DBSI retained any ownership rights. (Adv.Doc. # 16, p. 4.) This factual dispute is addressed later in this opinion.

to or arising from the implementation of this Order." (Doc. # 1050, p. 7, ¶ 17.)

On February 6, 2009, the Court entered the order ("Sale Approval Order") providing that, as the Republic TIC Investors had elected to have the DBSI Republic Masterlease rejected and to assume and assign the Republic Lease, DBSI LeaseCo would "seek to reject" the DBSI Republic Masterlease, effective January 30, 2009, pursuant to a later-filed rejection order in the form prescribed as an attachment to the Sale Approval Order ("Assumption and Assignment of Subleases Agreement"). The Assumption and Assignment of Subleases Agreement also stated that DBSI LeaseCo "hereby transfer[red], assign[ed], and convey[ed]" the subleases associated with the Property pursuant to 11 U.S.C. § 365, including the Republic Lease, effective January 30, 2009. (Doc. # 1708, pp. 4, 9, and ex. IV, p. 2.) The Sale Approval Order further provided that:

On or before 12:00 noon Eastern Time on February 13, 200[9] (the *"Final Agreement Deadline "*), the [TIC Investors] for a particular Property shall provide to counsel for the Debtors a duly executed "Assumption and Assignment of Subleases Agreement" substantially in the form attached hereto.... If the [TIC Investors] for a particular Property fail to provide to counsel for the Debtors, on or before the Final Agreement Deadline ... then: (a) ... any subleases and executory contracts related to such Property shall be rejected effective as of January 30, 2009; and (b) counsel for the Debtors shall file under certification of counsel an order so providing in substantially the same form [attached as Exhibit V] (the *"Form Rejection Order "*).

(*Id.* at p. 5, ¶ 6 (emphasis in original).) Similar to the order establishing the sales procedures, the Sale Approval Order stipulated that "[t]his Court retains jurisdiction to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order...." (*Id.* at p. 10, ¶ 18.)

On March 9, 2009, DBSI LeaseCo filed an order providing for the rejection of the DBSI Republic Masterlease (Doc. # 2397), which the Court approved on March 10, 2009 (Doc. # 2459). The contents of the approved rejection order comply with the prescribed form of the Assumption and Assignment of Subleases Agreement attached as an exhibit to the Sale Approval Order. Thus, the Court entered the order approving the assumption and assignment of the Republic Lease on February 6, 2009, whereas the Court entered the order approving the rejection of the DBSI Republic Masterlease on March 10, 2009.

On March 3, 2009, Republic filed an action in the Texas state court—101st District Court of Dallas County—seeking a declaratory judgment against DBSI Republic that Republic's sublease as to the Property had been terminated when this Court entered the Sale Approval Order in which DBSI LeaseCo sought to reject the DBSI Republic Masterlease effective January 30, 2009 ("Adversary Action"). *Republic Underwriters Ins. Co. v. DBSI, LLC,* Case No. 09–02508. While the Adversary Action was pending, Republic filed a second action in the Texas state court—160th District Court of Dallas County—against the Republic TIC Investors who it believes own approximately 52 percent of the Property, similarly seeking a declaration that Republic's sublease as to the Property had been terminated when this Court entered the Sale Approval Order ("Second Action").

On March 23, 2009, TIC Properties Management, LLC ("TIC Properties"), as agent for the Republic TIC Investors, filed a notice of removal as to the Adversary Action in the United States Bankruptcy

Court for the Northern District of Texas ("Texas Bankruptcy Court"). Subsequently, on April 15, 2009, TIC Properties removed the Second Action to the Texas Bankruptcy Court. As to both removals, Republic filed statements that it did not consent to entry of final orders or judgments by the Texas Bankruptcy Court and moved to remand both actions back to Texas state court. (Adv.Doc. # 13, pp. 6–8.)

On May 18, 2009, upon agreement of Republic and TIC Properties, the Texas Bankruptcy Court consolidated the Adversary Action and the Second Action, and transferred the consolidated actions to this Court. (*Id.* at p. 8.)

Before this Court are two matters. First, Republic's motion to remand the now consolidated action to Texas state court remains. Republic argues that this Court is without jurisdiction to hear its claims for declaratory judgment, that even if the Court has jurisdiction, it must abstain in accordance with the mandatory abstention prescribed by 28 U.S.C. § 1334(c)(2), or, in the alternate, the Court should choose to abstain based upon the permissive abstention allowed by 28 U.S.C. § 1334(c)(1). (Adv.Doc. # 5.) In response, TIC Properties contends that Republic's claims constitute a "core" proceeding over which the Court has jurisdiction, that mandatory abstention is inapplicable, and that permissive abstention is not warranted. (Adv.Doc. # 15.) Second, proceeding on the theory that the Court's Sale Approval Order terminated the Republic Lease, Republic requests that the Court enter a preliminary injunction preventing the Republic TIC Investors from collecting monthly rent pursuant to the Republic Lease in excess of the fair market rent and allowing Republic to escrow the difference between the monthly rent provided for in the Republic Lease and the fair market rent pending resolution of Republic's con-

solidated action. (Adv.Doc. # 13.) In response, TIC Properties argues that the factors that courts consider in determining whether to grant a preliminary injunction weigh heavily in favor of denying Republic's request. (Adv.Doc. # 16.)

## DISCUSSION

### Jurisdiction

■ Republic's motion to remand contends that the Republic Lease was rejected for two reasons: (1) "[t]he rejection ... resulted in the termination of the [DBSI Republic Masterlease]. By operation of law, the termination of the [DBSI Republic Masterlease] effected an automatic termination of the [Republic Lease]"; and (2) "[o]n information and belief, at least three [Republic TIC Investors], including Spykerman–Republic, LLC, P.B. Duncan–Republic, LLC, and DBSI Republic, all failed to execute and deliver the Assumption and Assignments by the February 13, 2009 deadline." (Adv.Doc. # 5, p. 8.)

In its reply brief, Republic states: "The disputed issues in the Action between Republic and the [Republic TIC Investors] concern: (1) whether the Debtors had any right to assign the Sublease when they purportedly assigned it; and (2) whether the assignment (if any) is effective given the dates the relevant documents were executed...." (Adv.Doc. # 18, p. 4.) The first issue strikes me as a fundamental issue of bankruptcy law, thereby providing the Court with jurisdiction over a "core" proceeding.

■ Federal bankruptcy jurisdiction is provided by 28 U.S.C. § 1334. Section 1334(a) states that "district courts shall have original and exclusive jurisdiction of all cases under title 11," and § 1334(b) states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or aris-

ing in or related to cases under title 11." 28 U.S.C. § 1334; *see also In re Combustion Eng'g, Inc.,* 391 F.3d 190, 225 (3d Cir.2004). Further, 28 U.S.C. § 157(a) states that a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Accordingly, federal bankruptcy jurisdiction extends to four categories of title 11 matters: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *In re Combustion Eng'g,* 391 F.3d at 225 (quoting *Torkelsen v. Maggio (In re Guild & Gallery Plus),* 72 F.3d 1171, 1175 (3d Cir.1996)).

 Cases under title 11, proceedings arising under title, and proceedings arising in a case under 11 are termed "core" proceedings; proceedings arising in a case under title 11 are termed "non-core" proceedings. *Id.* at 226. A proceeding is "core" "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Guild,* 72 F.3d at 1178 (quoting *In re Marcus Hook Dev. Park Inc.,* 943 F.2d 261, 267 (3d Cir.1991)). Whereas bankruptcy courts may hear and enter final judgments as to "core" proceedings, bankruptcy courts may hear "non-core" proceedings, but then "must submit proposed findings of fact and conclusions of law to the district court subject to de novo review." *In re Stone & Webster, Inc.,* 367 B.R. 523, 525 (Bankr.D.Del.2007).

 Courts use various tests and standards to determine whether a proceeding is "core." In the Third Circuit, a court first must determine if a proceeding fits into one of the categories of "core" proceedings outlined in 28 U.S.C. § 157(b)(2).

*Id.* at 526. Only if it does not conform with one of these categories should the court determine whether the proceeding invokes a substantive right provided by title 11 or whether the proceeding could only arise in the context of a bankruptcy case. *Id.* In short, a "core" proceeding "must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be peripheral state law involvement." *Id.* (quoting *Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC),* 325 B.R. 372, 375 (W.D.Pa. 2005)).

Section 157(b)(2) states, in pertinent part, that "core" proceedings include:

(A) matters concerning the administration of the estate; ...

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, ....

28 U.S.C. § 157(b)(2). The order approving the sales procedures and the subsequent Sale Approval Order and order rejecting the DBSI Republic Masterlease clearly fall within these categories: the rejection of the DBSI Republic Masterlease and the assumption and assignment of subleases as to the Property pertain to the administration of the estate; the orders approved the lease of property; the orders approved the sale of property; and orders affected the liquidation of assets of the estate. The instant proceeding directly relates to these orders and their effect

on the estate—specifically whether the orders terminated subleases, including the Republic Lease, as Republic contends—thereby challenging the disposition of estate assets and similarly falling within these categories.

 Moreover, even if the instant proceeding does not fall within one of § 157(b)(2)'s enumerated categories, I find that it is a "core" proceeding. Republic challenges the effect of orders that sought to reject certain leases and assume and assign certain subleases pursuant to § 365. The rejection and assumption and assignment of leases and executory contracts are fundamental issues of bankruptcy law unique to the Bankruptcy Code. *See, e.g., NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); *In re Mirant Corp.,* 378 F.3d 511, 517 (5th Cir. 2004) (quoting *NLRB v. Bildisco & Bildisco* for same proposition). Thereby, Republic's claim regarding its sublease finds its foundation in rights that would not exist or be recognized independent of DBSI LeaseCo's bankruptcy. Indeed, Republic would have no claim but for DBSI LeaseCo's bankruptcy filing and the orders entered in this Court as to that filing. Further, Republic's claim as to its sublease inherently challenges the effect of this Court's orders as to all implicated Master-leases and subleases, the outcome of which will impact numerous other parties affected by Debtors' bankruptcy filings. Undoubtedly, this is a "core" proceeding. Accordingly, this Court has jurisdiction.

*Mandatory Abstention*

 As Republic's action is a "core" proceeding, mandatory abstention is inapplicable. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, *related to a case under title 11 but not arising under title 11 or arising in a case under title 11,* with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). Pursuant to this section, although a bankruptcy court may have jurisdiction over a proceeding, it must nonetheless abstain from hearing that proceeding if *each* of six requirements is met, one of which is that "the matter before the Court is non-core." *Trans World Airlines, Inc. v. Icahn (In re TWA, Inc.),* 278 B.R. 42, 50 (Bankr.D.Del. 2002). As I find that the instant matter is a "core" proceeding, mandatory abstention is not required.

*Permissive Abstention*

 Though mandatory abstention is inapplicable, permissive abstention may be appropriate. Pursuant to 28 U.S.C. § 1334(c)(1), a district court, "in the interest of justice, or in the interest of comity with State courts or respect for State law, [may abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Courts consider twelve factors in determining whether permissive abstention is appropriate:

1. the effect or lack thereof on the efficient administration of the estate;

2. the extent to which state law issues predominate over bankruptcy issues;

3. the difficulty or unsettled nature of applicable state law;

4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5. the jurisdictional basis, if any, other than section 1334;

6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7. the substance rather than the form of an asserted "core" proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. the burden of the court's docket;

10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. the existence of a right to a jury trial; and

12. the presence of non-debtor parties.

*LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.),* 312 B.R. 249, 253–54 (Bankr.D.Del.2004); *see also In re Integrated Health Servs., Inc.,* 291 B.R. 615, 619 (Bankr.D.Del.2003); *Valley Media, Inc. v. Toys R Us, Inc. (In re Valley Media, Inc.),* 289 B.R. 27, 29 (Bankr.D.Del.2003). In evaluating these factors, a court does not engage in a mere "mathematical exercise." *Trans World Airlines, Inc. v. Karabu Corp.,* 196 B.R. 711, 715 (Bankr.D.Del.1996). Rather, courts weigh some factors more substantially than others, particularly the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is "core" or "non-core" under 28 U.S.C. § 157. *In re LaRoche Indus.,* 312 B.R. at 255; *Gilbane Bldg. Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.),* 337 B.R. 864, 878 (Bankr.S.D.Tex.2006). Ultimately, the decision as to whether to permissively abstain "is left up to the broad discretion of the bankruptcy court." *In re Encompass Servs.,* 337 B.R. at 877; *see also In re RNI Wind Down Corp.,* 348 B.R. 286, 295 (Bankr.D.Del.2006).

▮ I will address the factors in order. First, as noted above, the instant action likely will have a significant effect on the efficient administration of the subject estates. Adjudication of the impact of this Court's orders as to the rejection of Masterleases and assumption and assignment of subleases will affect numerous Masterleases and their respective subleases, which will impact the Court's continued administration of the estates of Debtors whose bankruptcy cases are ongoing. This factor strongly disfavors abstention.

Second, also as discussed above, bankruptcy law issues, if not predominate, at least are as substantial and decisive as state law issues. The presence of significant bankruptcy law issues disfavors abstention.

Third, to the extent that state law is implicated in this proceeding, the dispute may involve claims based on Texas landlord-tenant law and the granting of a declaratory judgment under Texas state law. The claims do not implicate any area of unsettled state law. This Court is as competent as the Texas state court to apply established Texas state law. Accordingly, this factor does not favor abstention.

Fourth, there are no related proceedings in state court or any other non-bankruptcy court. This factor is inapplicable.

Fifth, in addition to this Court having jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, jurisdiction is proper independent of § 1334. The instant proceeding involves the interpretation of the Bankruptcy Code, a federal law, the amount implicated in the controversy exceeds $75,000, and there is complete diversity between the named parties: Republic

is a Texas company whereas DBSI Republic is a Delaware company and the sixteen named Republic TIC Investors are all Delaware limited liability companies. 28 U.S.C. §§ 1331 and 1332; Adv. Doc. # 15, p. 36. Thus, this factor disfavors abstention.

Sixth, this proceeding is closely related to Debtors' bankruptcy cases: Republic's claims stem from orders this Court entered in the bankruptcy case. Indeed, as noted, the outcome of this proceeding could have implications for many of the Debtors, their creditors, and other parties involved in the bankruptcy cases. Accordingly, this factor heavily disfavors abstention.

Seventh, I have held that this is a "core" proceeding. Republic's claims call for the determination and analysis of bankruptcy law and the interpretation of orders entered by this Court. This factors favors not abstaining.

Eighth, as the matters are "core," implicate fundamental issues of bankruptcy law, and relate to orders entered by this Court, it would be very difficult, perhaps infeasible, for a state court to sever the bankruptcy issues from the state law issues. In deciding the state law issues, the state court most likely would have to interpret orders entered by this Court, and thereby, would have to take up bankruptcy law issues. Thus, this factor heavily favors not abstaining.

Ninth, as to this Court's docket, in the context of a motion requesting that this Court permissively abstain, I recently noted the obvious: "We are in the midst of the most severe recession and credit crisis in decades, and the volume of major chapter 11 filings in this Court has risen to an unprecedented level." *Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.)*, 407 B.R. 593, 601 (Bankr. D.Del.2009). This factors favors abstention.

Tenth, there is no indication that the transfer of the instant proceeding to this Court involved forum shopping. This Court was the situs for the underlying bankruptcy case, and the orders implicated by the proceeding place jurisdiction over disputes arising under those orders in this Court. (Doc. # 1050, p. 7, ¶ 17; Doc. # 1708, p. 10, ¶ 18.) Accordingly, this factor does not favor abstention.

Eleventh, Republic's action for declaratory relief does not entitle it to a jury trial, nor has Republic requested or disclosed that it will request a jury trial. Consequently, this factor is inapplicable.

Twelfth, while the named parties are not debtors, Debtors, specifically DBSI Lease-Co, are undoubtedly interested parties as to the outcome of the instant proceeding. This factors disfavors abstention.

The majority of the factors disfavor abstention. Moreover, those factors considered more substantial—the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is "core"—indicate that abstention is not warranted. Republic's claims implicate fundamental issues of bankruptcy law and, as discussed below, require the analysis of orders recently entered by this Court, the interpretation of which undoubtedly will affect a significant portion of Debtors' estates and many other parties. Abstention is inappropriate. Consequently, Republic's request that this Court permissively abstain is denied.

*Preliminary Injunction*

▮ Rule 65(a) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Fed. R. Bankr.P. 7065, permits a court to issue a preliminary injunction upon notice to the adverse party. It is within the sound discretion of a court to grant a motion for a preliminary injunction. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir.1982). Courts

consider four factors in determining whether to issue a preliminary injunction: "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.2004). The issuance of a preliminary injunction is considered "an extraordinary remedy" that "should be granted only in limited circumstances." *Id.* (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)).

*Likelihood of Success on the Merits*

■ To satisfy the first factor, likelihood of success on the merits, a plaintiff need only establish a *prima facie* case, not that it certainly will ultimately prevail on the merits. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir.2001). As outlined above, Republic contends that it is entitled to a declaratory judgment because: (1) the rejection of the DBSI Republic Masterlease resulted in the termination of the Republic Lease, and (2) at least three Republic TIC Investors failed to execute the Assumption and Assignment of Subleases Agreement on time. I find that Republic has very little likelihood of success as to the merits of these two arguments.

■ As a threshold matter, I address Republic's assertion that in a bankruptcy case the rejection of a lease results in a termination of that lease. Republic contends that the rejection of the DBSI Republic Masterlease provided for in the Sale Approval Order "resulted in the termination of the [DBSI Republic Masterlease]. By operation of law, the termination of the [DBSI Republic Masterlease]

effected an automatic termination of the [Republic Lease]." (Adv.Doc. # 5, p. 8.) Republic's position is wrong. It is well-settled that the rejection of a lease pursuant to § 365 results in a prepetition breach; it does not constitute a termination of the lease. *See, e.g., Eastover Bank For Savings v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077 (5th Cir.1994), *cert. denied sub nom. Sowashee Venture v. EB, Inc.*, 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *Kopolow v. P.M. Holding Corp. (In re Modern Textile, Inc.)*, 900 F.2d 1184 (8th Cir.1990); *Leasing Serv. Corp. v. First Tennessee Bank Nat'l Ass'n*, 826 F.2d 434 (6th Cir. 1987); *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 532 (Bankr.D.Del.1992) ("Because the rejection constitutes a pre-petition breach, the damages are paid with other general unsecured claims."); *In re Sheard*, 1999 WL 454260, **2–3, 1999 Bankr.LEXIS 811, at *10 (Bankr.E.D.Pa. June 24, 1999) ("[R]ejection whether by motion or by operation of law under § 365 is not the equivalent of termination. Rather rejection constitutes a breach of the lease and merely entitles the landlord to damages."). Indeed, § 365(g) explicitly provides that "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease." 11 U.S.C. § 365(g).

Central to Republic's position is that the Masterlease was rejected and thereafter DBSI LeaseCo attempted to assign the Republic Lease. However, the Sale Approval Order and its attached Assumption and Assignment of Subleases Agreement provided that "Assignor *will seek* to reject the [Master] Lease pursuant to section 365 of the Bankruptcy Code as of the Effective Date (as defined below)." (Doc. # 1708, ex. IV, p. 2 (emphasis added).) The Assumption and Assignment of Subleases Agreement goes on to state that "Assignor *hereby transfers,* assigns and conveys unto

Assignee pursuant to section 363 and 365 of the Bankruptcy Code all of Assignor's right, title and interest as sublessor in, to and under the Subleases as of the Effective Date." (*Id.* (emphasis added).) The Effective Date is defined as "January 30, 2009, at which time Assignee shall assume all of Assignor's obligations under the Subleases." (*Id.* at p. 3.) When these provisions are read together, it is obvious that the purpose of the Sale Approval Order and the Assumption and Assignment of Subleases Agreement was to first assume and assign the subleases and then reject the Masterleases. Republic's fundamental premise that the DBSI Republic Masterlease was rejected first and then the Republic Lease was assumed and assigned is not supported by the Sale Approval Order and the Assumption and Assignment of Subleases Agreement.

In addition to the clear intent of these provisions, this Court's January 7, 2009 order approving Debtors' proposed sales procedures specifically states that Debtors and certain TIC Investors intended to reject the relevant Masterleases and assume and assign the accompanying subleases:

> If the TIC Investors elect (pursuant to a written notice delivered to counsel to the Debtors and the Committee) on or before **January 26, 2009** *to have the applicable MasterLease rejected but the applicable Subleases assumed and assigned to the TIC Investors* . . ., effective as of **January 30, 2009** . . ., the Debtors and the TIC Investors will enter into an agreed upon form Sublease Assumption and Assignment agreement. . . .

(Doc. # 1050, ex. B, p. 1 (emphasis added).) Republic's position is patently in conflict with the order approving Debtors' proposed sales procedures and related orders and agreements: the easily discernible purpose of these orders and agreements is to remove the holders of the Masterleases from having a role in the operation of the properties owned by the TIC Investors while preserving for the TIC Investors the benefit of the accompanying subleases.

Republic's misreading of the clear intention of these provisions is not as egregious and misleading as certain of its other statements about the unequivocal wording of other provisions of the Sale Approval Order. Republic states that "the Delaware Bankruptcy Court made clear, including in the [Sale Approval Order], that nothing in the Order could be construed as a determination, acknowledgment or agreement impacting the rights of any party regarding the effect of rejection of any subleases, sublease attornment or equivalent provision." (Adv.Doc. # 5, p. 7.) The relevant provision of the Sale Approval Order actually reads:

> Nothing set forth herein shall be construed as a determination, or as an acknowledgment or agreement on the part of any party, regarding the effect of rejection of the Subleases hereunder on any automatic sublease assignment provision contained in a Masterlease or any lease or sublease attornment or equivalent provision or clause.

(Doc. # 1708, p. 10, ¶ 19.) Thus, the Sale Approval Order actually provides that rejection of the subleases did not make any determination with respect to any automatic sublease assignment provision contained in a Masterlease or any lease or sublease attornment or equivalent provision or clause. This provision of the Sale Approval Order has no application to the dispute here.

Republic goes on to state that the Sale Approval Order provides that: "Nothing herein shall be construed as a determination, nor as an acknowledgment or agreement on the part of any party . . . that any rejection or assumption or assignment of

any Masterlease, Sublease or Contract hereunder shall have any effect on any agreement between non-debtor parties." (Doc. # 5, p. 7.) The pertinent provision of the Sale Approval Order actually reads in pertinent part:

> Nothing herein shall be construed as a determination, nor as an acknowledgment or agreement on the part of any party, that (a) the applicable Debtor's interest in any agreement referred to as a "sublease" is, in fact, a sublease, (b) that such agreement constitutes property of the Debtor's estate, ... or (d) that any rejection or assumption and assignment of any *Masterlease, Sublease or Contract* hereunder shall have any effect on *any agreement between non-debtor parties,* nor shall anything herein impair, prejudice or affect, in any way, any rights of parties to such "subleases" from seeking recovery of any obligations arising from year-end reconciliations from any parties to such "subleases" or any assignees or designees of any such parties.

(Doc. # 1708, pp. 9–10, ¶ 14 (emphasis added).) This provision obviously refers to any agreement other than any Masterlease, Sublease, or Contract. Also, the sublease at issue, the Republic Lease, is between a Debtor and Republic. Thus, it is not an agreement between non-debtor parties, and this provision has no bearing on the dispute here.[3]

■■■ That the DBSI Republic Masterlease was not meant to be rejected prior to the assumption and assignment of the Republic Lease is patently clear from the undisputed facts. It is well-settled that a lease rejection becomes effective when the bankruptcy court enters an order authorizing that rejection. The majority of courts, including the Bankruptcy Court for the District of Delaware, hold that court approval is a "condition precedent" to an effective lease rejection. *See, e.g., Pac. Shores Dev. LLC v. At Home Corp. (In re At Home Corp.),* 392 F.3d 1064, 1069 (9th Cir.2004) (ascribing to the majority view); *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.),* 67 F.3d 1021, 1025 (1st Cir.1995) ("[W]e believe that section 365(a) is most faithfully read as making court approval a condition precedent to the effectiveness of a trustee's rejection of a nonresidential lease."); *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.),* 179 B.R. 33, 37 (S.D.N.Y.1995) (ascribing to the majority view and citing seven other courts that also ascribe to it); *In re Chi–Chi's Inc.,* 305 B.R. 396, 399 (Bankr.D.Del. 2004) (ascribing to the majority view and citing In re Thinking Machs.). Those courts that ascribe to the minority view that a lease may be effectively rejected when a trustee "makes up [her or] his mind to [reject a lease] and communicates [her or] his decision in an appropriate manner," nevertheless still hold that "[t]he [rejection] may become effective only after the court approves it." *By–Rite Distrib., Inc. v. Brierley (In re By–Rite Distrib., Inc.),* 55 B.R. 740, 743–43 (D.Utah 1985); *In re Joseph C. Spiess Co.,* 145 B.R. 597, 601 (Bankr.N.D.Ill.1992). Indeed, courts attempting to reconcile these two viewpoints have stated that: "the text of section 365(a) plainly indicates that a trustee's rejection of a nonresidential lease is conditional upon court approval." *In re Think-*

---

**3.** In its motion for a preliminary injunction, Republic characterizes this provision as: "the Bankruptcy Court made clear that nothing in the [Sale Approval] Order could be construed as a determination, acknowledgement [sic] or agreement impacting the rights of any party regarding the effect of rejection of any subleases, sublease attornment or equivalent provision." (Adv.Doc. # 13, p. 10.) For the reasons stated above, Republic's characterization is patently incorrect and egregiously misleading.

*ing Machs.*, 67 F.3d at 1025. It is clear that the rejection of a lease, regardless of the applicable rejection date, is not effective until the Court enters an order as to the rejection. Said differently, the court must approve the rejection for it to be effective.

■■■ On February 5, 2009, the Court entered the order approving the Assumption and Assignment of Subleases Agreement—which the Republic TIC Investors had elected to enter into—which states that "Assignor *hereby transfers,* assigns, and conveys to Assignee" the subleases, and that "Assignor *will seek* to reject the [Master] Lease." (Doc. # 1708, ex. IV, p. 2 (emphasis added).) Debtors subsequently certified to the Court an order providing for the rejection of the DBSI Republic Masterlease, which the Court approved exactly as certified on March 10, 2009. (Doc. ## 2397 and 2459.) The certification states: "The attached order provides for (1) the rejection of the master lease and executory contracts for the Option # 1B Properties," including the Property. (Doc. # 2397, p. 4.) The proposed order states: "The applicable Debtor's rejection effective as of January 30, 2009 ... of each of the Masterleases set forth on Exhibit A hereto ... is approved pursuant to TIC Option # 1B ...." (*Id.* at ex. 1, p. 2.) Exhibit A identifies the DBSI Republic Masterlease as being rejected. (*Id.* at ex. A, p. 3.) Thus, until the rejection order was entered on March 10, 2009, the DBSI Republic Masterlease was in full force and effect from the petition date to the entry of the rejection order and it was during that period that the Republic Lease was assumed by DBSI LeaseCo and assigned to the Republic TIC Investors.[4]

Thus, the order approving the Assumption and Assignment of Subleases Agreement was entered by the Court on February 6, 2009, whereas the order approving the rejection of the DBSI Republic Masterlease was entered by the Court on March 10, 2009. Accordingly, the assumption and assignment of the Republic Lease was approved and effected *before* the rejection of the DBSI Republic Masterlease was approved. Further, per an email sent to Debtors, the Republic TIC Investors all signed the Assumption and Assignment of Subleases Agreement by February 13, 2009. (Adv.Doc. # 34, ex. 2.) Accordingly, I find that Republic's argument that the rejection of the DBSI Republic Masterlease resulted in the termination of the Republic Lease is without foundation.

Republic's second argument is that certain Republic TIC Investors failed to execute and deliver the Assumption and Assignment of Subleases Agreement by the February 13, 2009 deadline. (*See* Doc. # 1708, p. 5, ¶ 6.) Republic states that, "on information and belief," three Republic TIC Investors did not satisfy the deadline: Spykerman–Republic, LLC, P.B. Dungan–Republic, LLC, and DBSI Republic. (Adv. Doc. # 13, pp. 6 and 9.) However,

---

4. Under appropriate circumstances, this Court may enter a lease rejection order with an effective date earlier than the date the order is entered. *See, e.g., TW, Inc. v. Angelastro (In re TW, Inc.),* 2004 WL 115521, *2, 2004 U.S. Dist. LEXIS 671, at *6 (D.Del. Jan. 14, 2004); *In re Chi–Chi's, Inc.,* 305 B.R. 396, 399 (Bankr.D.Del.2004) ("[T]he bankruptcy court has discretion to approve a rejection of a nonresidential lease pursuant to § 365(a) retroactive to the motion filing date, when principles of equity so dictate. Moreover, the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)."); *In re Fleming Cos., Inc.,* 304 B.R. 85, 96 (Bankr.D.Del.2003) ("Rejection has been allowed nunc pro tunc to the date the Motion is filed or the premises is surrendered, whichever is later, only in certain circumstances.... To grant [retroactive] rejection, the Debtors must have stated an unequivocal intent to reject the leases.").

there is ample evidence that the Assumption and Assignment of Subleases Agreement was signed by all the Republic TIC Investors. In addition to an email sent to Debtors confirming that all the Republic TIC Investors had executed the Assumption and Assignment of Subleases Agreement by February 13, 2009 (Adv.Doc. # 34, ex. 2), the Assumption and Assignment of Subleases Agreement as to the Property has attached to it a notarized signature for each of the Republic TIC Investors approving the agreement. (Adv. Doc. # 16, ex. B.) The latest of these notarized signatures was February 2, 2009.

Further, of the three Republic TIC Investors cited by Republic, two clearly timely submitted their notarized signatures. As to "Spykerman–Republic, LLC," there is a signature of one "Ed Spykerman," who I assume is the authorized representative of that entity; the signature was notarized on January 31, 2009. As to "P.B. Dungan–Republic, LLC," there is a certified signature notarized on January 29, 2009. (*Id.*) With respect to "DBSI Republic," if TIC Properties is correct that all ownership interest in the Property was transferred from DBSI Republic to the Republic TIC Investors, there should be no signature from DBSI Republic as to any agreement involved in the assumption and assignment of the Republic Lease. Rather, the only signature of a DBSI entity should be from DBSI LeaseCo, the entity that the Republic TIC Investors contracted with to manage the Property, as assignor. DBSI LeaseCo appropriately signed the Assumption and As-

signment of Subleases Agreement as assignor. That acknowledgment is dated February 16, 2009; as it is not a Republic TIC Investor, DBSI LeaseCo was not subject to the February 13, 2009 deadline.[5]

As noted in footnote 2, Republic and TIC Properties agree that DBSI Republic successfully transferred 52% of the ownership in the Property to a group of sixteen investors. Of the thirty-two certified signatures as to the Assumption and Assignment of Subleases Agreement pertaining to the Property submitted to the Court by TIC Properties, sixteen are from the group of investors that the parties agree took 52% ownership of the Property. (Adv.Doc. # 16, ex. B.) The remaining sixteen signatures are from the group of investors that TIC Properties contends took the remaining 48% ownership in the Property. Based on information supplied by Debtors' counsel, I believe that DBSI Republic did successfully transfer its 100% interest in the Property to the entire group of thirty-two investors; the issues as to whether that 100% transfer was successful may be attributed to a scrivener's error that I believe is correctable by appropriate recordations. Also, when DBSI LeaseCo signed the Assumption and Assignment of Subleases Agreement as assignor, it necessarily accepted all thirty-two signatures of the investors as assignees, and also necessarily acknowledged that no other party held an interest in the Property. None of the accepted assignee signatures are from a DBSI entity. Accordingly, when DBSI LeaseCo signed the

---

**5.** In its reply brief as to its motion for a preliminary injunction, Republic states that "the Court required the assignment and assumption of the Sublease to be executed before February 13, 2009. The assignment was not executed by this deadline." (Adv.Doc. # 19, p. 5.) This statement is incorrect. Pursuant to the Sale Approval Order, the Republic TIC Investors were required to execute the

Assumption and Assignment of Subleases Agreement by February 13, 2009. (Doc. # 1708, p. 5, ¶ 6.) The other party to the agreement (i.e. the assignor) was not subject to this deadline. Accordingly, the Court did not require the Assumption and Assignment of Subleases Agreement to be executed by February 13, 2009; it only required the Republic TIC Investors to execute it by then.

Assumption and Assignment of Subleases Agreement, I conclude that it acknowledged that no DBSI entity had an interest in the Property.

Moreover, as noted above, pursuant to the Sale Approval Order, a condition to rejecting a sublease, such as the Republic Lease, for failure of the assignees to timely execute and deliver the Assumption and Assignment of Subleases Agreement required counsel for Debtors to file a certification and order providing for such rejection. (Doc. # 1708, p. 5, ¶ 6.) There is no evidence to suggest that Debtors' counsel filed such a certification and order with respect to the Republic Lease.

Accordingly, I find that the chances for Republic succeeding on the merits in a trial of this action are slim to none. This factor weighs so heavily in favor of denying Republic's motion for the extraordinary remedy of a preliminary injunction that I could deny the motion without consideration of the remaining factors. Nevertheless, the remaining factors also point towards denial, and, therefore, I will address them briefly.

*Remaining Factors*

To show that it will suffer irreparable harm if its request for a preliminary injunction is denied, the party requesting the injunction "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989). The Third Circuit has held that mere "[e]conomic loss does not constitute irreparable harm." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citing *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) and *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir.1976)). Similarly, our District Court has stated, "where the alleged harm is economic, 'the threshold of "peculiarity" that the proposed action threatens must be high, because purely economic injuries are generally compensable and do not require injunctive relief.'" *Drabbant Enters., Inc. v. Great Atl. & Pac. Tea Co., Inc.*, 688 F.Supp. 1567, 1574 (D.Del.1988) (quoting *Coca-Cola Bottling Co. of Elizabethtown v. Coca-Cola Co.*, 668 F.Supp. 906, 910 (D.Del.1987)).

In the instant proceeding, Republic has failed to demonstrate that the potential monetary harm of it paying the monthly rent set forth in the Republic Lease rather than its proposed fair market value rent cannot be redressed by a legal or equitable remedy following a trial. If Republic does prevail in its action, though I find such an outcome highly unlikely, it can sue the individual Republic TIC Investors for the difference. Depending on whether a portion or all of the ownership interest in the Property was transferred to the Republic TIC Investors, there are either sixteen or thirty-two Republic TIC Investors. If Republic prevails, it will not be unduly burdensome or infeasible for it to sue the individual owners. Additionally, as each Republic TIC Investor owns an interest in the Property, it is clear that the Republic TIC Investors may have funds that Republic can pursue if it prevails and the Republic TIC Investors do not pay. Indeed, a monetary judgment in favor of Republic would entitle Republic to a lien against the Property. *See, e.g.*, Tex. Civ. Prac. & Rem.Code § 31.002 (providing that a judgment creditor is entitled to aid from the court to reach property for the satisfaction of liabilities). There is little basis for Republic to contend that it will suffer irreparable harm if I do not grant its motion for preliminary injunction, especially as Republic merely alleges economic loss.

As to whether granting preliminary relief will not result in even greater harm to the nonmoving party, I note that the progression of Debtors' bankruptcy has demonstrated amply that many of the properties within Debtors' Property Management Business generate insufficient funds to cover all their associated expenses. Consequently, TIC Investors are forced to contribute funds. If I grant the preliminary injunction, the Republic TIC Investors will need to cover the deficiency created by Republic's lower monthly rent payment. Accordingly, granting the preliminary injunction may result in just as great harm to the non-moving party as not granting it may result in harm to Republic.

Finally, as to the whether the public interest favors granting the preliminary injunction, the balance of equities tips strongly against granting Republic's motion for a preliminary injunction. In particular, considering Republic's scant chance of prevailing on the merits, I must deny Republic's motion.

## CONCLUSION

For the reasons stated above, this Court has jurisdiction to hear the instant proceeding, Republic's request that this Court abstain from hearing the instant proceeding is denied, and Republic's motion for a preliminary injunction also is denied.

## ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Republic Underwriters Insurance Company's motion for remand (Adv.Doc. # 5) and application for a preliminary injunction (Adv. Doc. # 13) are both denied.